

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| JOSEPHINE DIAL WILLIAMS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | NO. 4:06-CV-522-A |
| | § | |
| PFIZER, INC. | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION
### and
### ORDER

On June 7, 2007, defendant, Pfizer, Inc.. ("Pfizer"), moved for summary judgment on all claims asserted by plaintiff, Josephine Dial Williams, in this suit. Having considered the motion, the response, the reply, the summary judgment evidence, and the applicable legal authorities, the court concludes that the motion should be granted.

I.

### Plaintiff's Claim

On July 28, 2006, plaintiff filed her original complaint in this court. Her sole claim is that Pfizer terminated her employment in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 623 et seq. ("ADEA").

II.

### The Motion for Summary Judgment

Pfizer maintains that plaintiff cannot establish a prima-facie case of age discrimination under the ADEA. Further, Pfizer contends that, even if she could, it had a legitimate, non-discriminatory reason for terminating plaintiff's employment and

that she has failed to show that such reason was actually pretext
for discrimination.

### III.

#### Facts

The facts set forth below are undisputed in the summary
judgment record:

Plaintiff began her employment with Park-Davis Warner
Lambert ("Park") as a pharmaceutical sales representative in
1989. She began employment with Pfizer at the age of 44 when it
acquired Park in 1999. Pfizer promoted plaintiff to a senior
neurospecialty consultant in 2004. Plaintiff received several
awards and honors from Pfizer for her sales achievements and in
November of 2004 she was appointed to a special group of senior
representatives called the "Masters". Among other requirements,
members of the Masters had to have a combined "score" of 65 when
calculating their number of years with Pfizer and their age.

Plaintiff's position included the responsibility of seeking
out doctors to hire for Pfizer speaking engagements. In January
of 2005 plaintiff got approval from Pfizer to schedule speaking
events for Dr. Martin Solomon ("Dr. Solomon"). The form signed
in January by Pfizer management and Dr. Solomon indicated that
his fee for such events, what Pfizer refers to as a "Local
Honorarium", would be $500.00. An additional form was signed in
February of 2005 that stated:

> If for any reason a speaking engagement is cancelled by
> Pfizer five or less business days prior to the scheduled
> engagement, Pfizer shall pay you the agreed upon

2

compensation . . . provided, however, that if the speaking engagement is rescheduled within a reasonable time, you agree to serve as a speaker and participate in the rescheduled program for no additional compensation.

App. Pl.'s Resp. to Mot. Summ. J. 114-15.

On March 16, 2007, plaintiff got approval to schedule Dr. Solomon for his first speaking engagement to occur on March 30, 2005. Plaintiff's boss, District Manager Ed McDaries ("McDaries"), asked her to attend another event scheduled for March 30. Plaintiff agreed to go and stated that she told McDaries she '"would be happy to cancel [Dr. Solomon's event] because [she] hadn't prepared for it.'" App. Pl.'s Resp. to Mot. Summ. J. 38.

At the request of plaintiff, Karris Littlepage ("Littlepage"), plaintiff's partner, visited Dr. Solomon on March 28, 2005, to inform him that the March 30 speaking event was canceled. Plaintiff brought dinner to Dr. Solomon and his staff at approximately 5:30 p.m. on March 30. At this time Dr. Solomon asked plaintiff about compensation for the canceled event. Plaintiff and Dr. Solomon then signed a form that stated at the top "Expenses Incurred in Connection with the Following Speaking Engagement" and the box below listed the location as the Silver Fox Steak House, the date as March 30, 2005, and the time as 6:30 p.m.. Def.'s App. Mot. Summ. J. 36. The form was then sent to Pfizer and Dr. Solomon later received a check for $500.00.

On April 13, 2005, Littlepage phoned plaintiff and told her that she was "in so much trouble" and needed "to go see Dr.

Solomon." App. Pl.'s Resp. to Mot. Summ. J. 20. Littlepage went on to explain to plaintiff that another Pfizer sales representative, Robbynn Ashmore ("Ashmore"), had called her and said that she was going to report plaintiff for giving Dr. Solomon "a check illegally." Id.

That same day, Ashmore reported to her immediate supervisor, District Manager Julie Embry ("Embry"), that plaintiff had paid Dr. Solomon for a speaking event that never occurred. Embry called McDaries to inform him of the situation. Embry's boss, Rick Allen, also phoned McDaries' boss, Regional Manager Tammy Martin ("Martin"), and alerted her to Ashmore's claim.

Following her conversation with Littlepage, plaintiff went to Dr. Solomon's office and informed him of the situation. Then, plaintiff called McDaries while she was still in the parking lot of Dr. Solomon's office and told him that she had paid Dr. Solomon for an event that never occurred. She stated to McDaries that she "thought [she] was in a lot of trouble." App. Pl.'s Resp. to Mot. Summ. J. 21. McDaries told plaintiff to get the honorarium check back from Dr. Solomon if he still had it and plaintiff did so. McDaries told plaintiff that he was going to have to report her regarding the incident, and that otherwise he would be reported. She told him to do whatever was necessary because he "didn't do anything wrong and obviously [she] had." Id. at 23.

After he had spoken with plaintiff, McDaries phoned Howard Hacker ("Hacker"), a compliance attorney for Pfizer, and informed

4

him of the situation with plaintiff and Dr. Solomon. Hacker took notes of his conversation with McDaries and followed up the investigation with two subsequent interviews with plaintiff. The first interview was conducted in person and the second was held over the telephone. Velia Buchanan ("Buchanan"), Hacker's assistant, took notes during both of the interviews. Plaintiff told Hacker that she knew what she had done was wrong. Buchanan's notes, along with Hacker's entire file on plaintiff, were produced at his deposition in the instant action.

After completing his investigation, Hacker, along with Human Resources personnel Ann Hodges ("Hodges"), made the decision to recommend that plaintiff be terminated. Hacker submitted this recommendation to "headquarters legal" and Hodges submitted it to "sales management." Chris Dowd ("Dowd") was the Specialty Representative Vice President at the time and gave final approval for plaintiff's termination. Following this final decision, McDaries and Martin informed plaintiff over the telephone that she was being terminated.

IV.

## Summary Judgment Principles

A party is entitled to summary judgment on all or any part of a claim as to which there is no genuine issue of material fact and as to which the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). The moving party has the initial burden of showing that there is no genuine issue of material

5

fact.  Anderson, 477 U.S. at 256.  The movant may discharge this burden by pointing out the absence of evidence to support one or more essential elements of the non-moving party's claim "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Celotex Corp. v. Catrett, 477 U.S. 317, 323-25 (1986).  Once the moving party has carried its burden under Rule 56(c), the non-moving party must do more than merely show that there is some metaphysical doubt as to the material facts.  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  The party opposing the motion may not rest on mere allegations or denials of pleading, but must set forth specific facts showing a genuine issue for trial.  Anderson, 477 U.S. at 248, 256.  To meet this burden, the nonmovant must "identify specific evidence in the record and articulate the 'precise manner' in which that evidence support[s] [its] claim[s]."  Forsyth v. Barr, 19 F.3d 1527, 1537 (5th Cir. 1994).  An issue is material only if its resolution could affect the outcome of the action.  Anderson, 477 U.S. at 248.  Unsupported allegations, conclusory in nature, are insufficient to defeat a proper motion for summary judgment.  Simmons v. Lyons, 746 F.2d 265, 269 (5th Cir. 1984).

The standard for granting a motion for summary judgment is the same as the standard for rendering judgment as a matter of law.  Celotex Corp., 477 U.S. at 323.  If the record taken as a whole could not lead a rational trier of fact to find for the

6

non-moving party, there is no genuine issue for trial.

Matsushita, 475 U.S. at 597.  See also Boeing Co. v. Shipman, 411
F.2d 365, 374-75 (5th Cir. 1969) (en banc) (explaining the
standard to be applied in determining whether the court should
enter judgment on motions for directed verdict or for judgment
notwithstanding the verdict).

V.

## Analysis

### A.   Applicable Legal Authorities

Because plaintiff relies upon only circumstantial evidence,
as opposed to direct evidence,[1] to establish age discrimination,
her claim must be analyzed under the evidentiary burden-shifting
framework of McDonnell Douglas Corp. v. Greene, 411 U.S. 792
(1973).  See, e.g., Russell v. McKinney Hosp. Venture, 235 F.3d
219, 222 (5th Cir. 2000).

This framework, in turn, requires plaintiff first to
establish a prima facie case of age discrimination under the
ADEA.  St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506 (1993).
That requires plaintiff to show that: (1) she was fired or
demoted; (2) she was qualified for the position in question; (3)
she was a member of a protected class (i.e. over the age of
forty); and (4) "[s]he was either i) replaced by someone outside

---

[1]Direct evidence of discrimination is "evidence that, if believed,
proves the fact of discriminatory animus without inference or presumption."
See, e.g., Sandstad v. CB Richard Ellis, Inc., 309 F.3d 893, 897 (5th Cir.
2002) (citation omitted).  If a plaintiff produces direct evidence, "the
burden of persuasion shifts to the defendant, who must prove that it would
have taken the same action regardless of discriminatory animus."  Id. (citing
Price Waterhouse v. Hopkins, 490 U.S. 228, 252-53 (1989)).

7

the protected class, ii) replaced by someone younger, or iii) otherwise discharged because of h[er] age." Machinchick v. PB Power, Inc., 398 F.3d 345, 350 (5th Cir. 2005)(internal quotation marks omitted); see Evans v. City of Houston, 246 F.3d 344, 350 (5th Cir. 2001).

If plaintiff makes out a prima-facie case, a presumption of discrimination arises and the burden shifts to Pfizer to articulate a legitimate, non-discriminatory reason for its actions. See Meinecke v. H & R Block of Houston, 66 F.3d 77, 83 (5th Cir. 1995) (citations omitted). "This burden on the employer is only one of production, not persuasion, involving no credibility assessments." Russell v. McKinney Hosp. Venture, 235 F.3d 219, 222 (5th Cir. 2000). If Pfizer meets this burden, the presumption in favor of plaintiff disappears, and she must then offer evidence sufficient to create an issue of material fact "'either (1) that [Pfizer's] reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that [Pfizer's] reason, while true, is only one of the reasons for its conduct, and another motivating factor is [plaintiff's] protected characteristic (mixed-motive[s] alternative).'" Rachid v. Jack in the Box, Inc., 376 F.3d 305, 312 (5th Cir. 2004) (quoting Rishel v. Nationwide Mut. Ins. Co., 297 F. Supp.2d 854, 865 (N.D.N.C. 2003)).

## B.   Plaintiff Has Not Adduced a Prima-Facie Case of Age Discrimination

Pfizer concedes that plaintiff has shown the first three

8

elements of her prima-facie case, but it maintains that she cannot show that she was replaced or that she was otherwise fired because of her age. Plaintiff contends that she has shown both of these. Specifically, plaintiff argues that Littlepage, her twenty-nine year old partner, in effect "replaced" her because McDaries relied on Littlepage to cover the work left by plaintiff's departure. Further, plaintiff claims that she has otherwise shown that she was dismissed because of her age through: (1) evidence of disparate treatment of Ashmore, and (2) a remark and statistics evidencing discriminatory animus on the part of Dowd. Pl.'s Br. Supp. Resp. to Mot. Summ. J. 17.

### 1. Plaintiff was not "replaced"

Here, plaintiff relies on McDaries' view that Littlepage took over plaintiff's duties and responsibilities in arguing that she was effectively replaced. However, in adducing a prima-facie case of age discrimination under the ADEA, a plaintiff is not "replaced", for purposes of meeting the fourth element, when her duties are distributed among other employees following her termination. Martin v. Bayland Inc., 403 F. Supp. 2d 578, 583 (S.D. Tex. 2005). McDaries stated that "[t]here were a . . . plentitude of primary care reps that were also kind of covering what [plaintiff] was previously responsible for." Pl.'s App. Resp. Mot. Summ. J. 208. The fact that McDaries was relying on Littlepage to handle some of plaintiff's responsibilities does not constitute a replacement. See id.

9

2. Plaintiff has not shown that she was otherwise dismissed because of her age

a. Disparate treatment of Ashmore

To meet the fourth element of a prima-facie case in a work-rule violation action by showing disparate treatment, a plaintiff must adduce evidence that another employee outside the protected class received different treatment under "'nearly identical' circumstances". Berquist v. Washington Mut. Bank, No. 05-20956, 2007 WL 2007333, at *7 (5th Cir. July 12, 2007)(quoting Perez v. Tex. Dep't Criminal Justice, 395 F.3d 206, 210 (5th Cir. 2004)). In the instant action, plaintiff claims that Ashmore's conduct, allegedly involving premature payment to a doctor for a speaking engagement that never occurred, was sufficiently similar to plaintiff's situation with Dr. Solomon, such that Ashmore not being terminated constituted discrimination. Pfizer argues that plaintiff and Ashmore were not under sufficiently similar circumstances.

Here, even assuming the events occurred exactly as plaintiff claims, she cannot show that she and Ashmore were similarly situated. First, the speaking engagements at issue were of two different types, each with its own set of rules and regulations regarding payment to the speakers. Second, Ashmore and plaintiff held different positions and reported to different district and regional managers. Most importantly, the alleged misconduct of plaintiff and Ashmore was not the same or even similar. Pfizer terminated plaintiff under the impression that she falsified a

10

document to convey that a speaking event took place, when in actuality such event never occurred. Regardless of whether plaintiff actually falsified the document, Pfizer was satisfied that she had and terminated her under that assumption.    Ashmore, on the other hand, was never accused of such conduct.    Thus, the court finds that plaintiff has failed to show that she was treated differently under nearly identical circumstances.

### b. Dowd's discriminatory animus

Plaintiff claims that a comment was made by Jude Wardle ("Wardle"), a Pfizer District Manager, "to the effect that Chris Dowd was 'targeting the Masters for termination,'" Pl.'s Br. Supp. Resp. to Mot. Summ. J. 20, and that such comment, combined with the statistics of Dowd's other terminations, evidence that Dowd was discriminating on the basis of age.  Pfizer argues that the comment is inadmissible hearsay, that there is insufficient evidence that Wardle ever said it, and that regardless, it is a stray remark that fails to show any discriminatory animus on the part of Dowd.  Pfizer also maintains that the statistics regarding employees terminated by Dowd actually support its claim that there was no discrimination occurring.

For a stray remark, such as the one allegedly made by Wardle, to provide sufficient evidence of discrimination, it must: "be 1) related to the protected class of persons of which the plaintiff is a member; 2) proximate in time to the terminations; 3) made by an individual with authority over the employment decision at issue; and 4) related to the employment

11

decision at issue." Auguster v. Vermilion Parish School Bd., 249 F.3d 400, 404-05 (5th Cir. 2001)(internal quotation marks and omitted). Here, Wardle alleged statement does not meet any of those elements because: (1) her comment related to the Masters program members, not specifically to age; (2) her comment was made several months before plaintiff even became a member of the Masters and at least nine months before she was terminated; (3) although her statement may have alluded to something Dowd had said the actual comment at issue was made by Wardle and there is no evidence that she had any authority over plaintiff's termination; and (4) there is no evidence linking the comment to Dowd's decision to terminate plaintiff. Thus, irrespective of the hearsay issue, and whether Wardle actually made the statement, such statement is a classic stray remark and is not sufficient to show Dowd was acting with discriminatory animus. Further, the court finds that the statistics, which show that 6 of the 13 employees fired by Dowd in the last year were over the age of 40, are not an indication that Dowd was discriminating. Accordingly, plaintiff has failed to adduce evidence that Dowd discriminated against her based on age.

C.   Pfizer Had a Legitimate, Non-Discriminatory Reason for Firing Plaintiff and Such Reason was Not Pretextual

Even if plaintiff had stated a prima-facie case of age discrimination, the court is amply satisfied that Pfizer would still be entitled to summary judgment, because it had a legitimate non-discriminatory reason for terminating her employment.

12

Meinecke, 66 F.3d at 83.  Pfizer was satisfied that plaintiff not only engaged in questionable conduct regarding a payment to Dr. Solomon, but also falsified a document related to the speaking event that never occurred.  Firing an employee for violating company rules is a legitimate, non-discriminatory reason for termination.  Further, plaintiff has failed to show such reason was actually pretext or that age was a motivating factor in Pfizer's decision to terminate her.  Rachid, 376 F.3d at 312.  As discussed above, she has not adduced evidence that she was terminated for any reason other than those stated by Pfizer. Accordingly, her claim for age discrimination must be dismissed.

VI.

### Order

For the reasons discussed above, the court concludes that Pfizer's motion for summary judgment should be granted. Therefore,

The court ORDERS that the above-captioned action be, and is hereby, dismissed with prejudice.

SIGNED July 27, 2007.

JOHN McBRYDE
United States District Judge

13